UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ANGEL ECHEVARRIA,<br><br>              Plaintiff,<br><br>v.<br><br>LOGAN CITY, a municipality of the State of Utah; HAYDEN NELSON, in his official and individual capacity; VICTOR DERAS, in his official and individual capacity; BRET RANDALL, in his official and individual capacity; and JOHN DOES 1-10,<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT (DOC. NO. 25)**<br><br><br><br>Case No. 1:22-cv-00075<br><br>Magistrate Judge Daphne A. Oberg |

        Defendants Logan City, Hayden Nelson, Victor Deras, and Bret Randall seek to enforce a settlement agreement they claim the parties reached at a mediation held on September 30, 2022.[1] Plaintiff Angel Echevarria argues no settlement agreement was reached because there was no meeting of the minds with respect to the issue of confidentiality, which he contends was a material term.[2] The parties filed a joint document containing stipulated facts to be considered for purposes of deciding Defendants' motion.[3] Pursuant to an order for additional briefing,[4] the

---

[1] (Mot. to Enforce Settlement Agreement ("Mot."), Doc. No. 25.)

[2] (Mem. in Opp'n to Defs.' Mot. to Enforce Settlement Agreement ("Opp'n"), Doc. No. 30.)

[3] (Stipulated Facts Related to Defs.' Mot. to Enforce Settlement Agreement ("Stipulated Facts"), Doc. No. 26.)

[4] (*See* Doc. No. 32.)

parties also filed supplemental briefs[5] addressing the applicability of *Reese v. Tingey Construction*.[6]

The parties expressly waived the confidentiality of their mediation as to the stipulated facts.[7] And those facts provide a sufficient basis for the court to assess the material terms of the parties' agreement. Upon review, it is apparent the parties entered into an enforceable oral agreement at the mediation on September 30, 2022, and a confidentiality provision was not an essential term of that agreement. Accordingly, Defendants' motion to enforce the agreement is granted.[8]

---

[5] (*See* Pl.'s Suppl. Br. On Defs.' Mot. to Enforce Settlement Agreement ("Pl.'s Suppl. Br."), Doc. No. 33; Defs.' Suppl. Br. in Support of Mot. to Enforce Settlement Agreement ("Defs.' Suppl. Br."), Doc. No. 34.)

[6] 2008 UT 7, 177 P.3d 605.

[7] (*See* Stipulated Facts 1, Doc. No. 26.)

[8] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 12.) Oral argument is unnecessary; this decision is based on the parties' written memoranda. *See* DUCivR 7-1(g).

<u>BACKGROUND</u>[9]

Mr. Echevarria filed this case alleging violations of his civil rights in connection with his arrest on June 16, 2020.[10]  Defendants moved to dismiss all claims in lieu of an answer.[11]  The parties agreed to stay briefing on the motion to dismiss to allow for mediation, which was held on September 30, 2022.[12]  Although Mr. Echevarria was represented by counsel at the September 30 mediation,[13] Mr. Echevarria's current attorney was not present.[14]

At the mediation, Mr. Echevarria personally conveyed an offer to the mediator to settle the case for $33,333.00.[15]  No other conditions or terms of settlement were conveyed by the mediator or discussed between the parties.[16]  Defendants accepted the offer.[17]  The mediator

---

[9] The parties jointly stipulated to the facts recited in this section as "admissible and undisputed" for purposes of the motion and opposition.  (Stipulated Facts 1, Doc. No. 26.)  They also agreed "to waive any privilege of confidentiality related to these facts," (*id.*), and the mediator agreed to "waive the mediator's privilege of confidentiality" related to the facts "only for the purpose of resolving Defendants' Motion to Enforce Settlement Agreement."  (Ex. 1 to Defs.' Suppl. Br., Decl. of Paul Matthews ¶¶ 2–3, Doc. No. 34-1.)

[10] (Stipulated Facts ¶ 1, Doc. No. 26.)

[11] (*Id.* ¶ 2.)

[12] (*Id.* ¶ 3.)

[13] (*See id.* ¶ 7.)

[14] (*Id.* ¶ 4.)

[15] (*Id.* ¶ 5.)

[16] (*Id.* ¶ 6.)

[17] (*Id.*)

communicated Defendants' acceptance of the offer to Mr. Echevarria and his counsel.[18]  The parties did not discuss the specific terms of a final settlement agreement at that time.[19]

Immediately following mediation, the mediator emailed the parties to confirm their settlement "pursuant to the following agreement," which included a confidentiality clause.[20]  The following business day, Mr. Echevarria's counsel emailed the mediator and Defendants' counsel to indicate Mr. Echevarria would "move forward with the settlement" but without the confidentiality provision.[21]  Following this email exchange, Defendants prepared a settlement agreement and sent it to Mr. Echevarria's counsel.[22]  In addition to providing for payment of $33,333.00 to Mr. Echevarria, the agreement sent by Defendants' counsel included a confidentiality clause.[23]  In the email, Defendants' counsel stated the Defendants "are pretty insistent on the confidentiality clause."[24]  Mr. Echevarria's counsel responded that "the addition of a confidentiality clause would be a deal breaker" for Mr. Echevarria.[25]

---

[18] (*Id.* ¶ 7.)

[19] (*Id.* ¶ 8.)

[20] (*Id.* ¶ 9 (citing Ex. A to Stipulated Facts, Email from Paul Matthews to Josh Chambers and Heather White (Sept. 30, 2022), Doc. No. 26-1).)

[21] (*Id.* ¶ 10 (citing Ex. B to Stipulated Facts, Email from J. Brett Chambers to Heather White and Paul Matthews (Oct. 3, 2022), Doc. No. 26-2).)

[22] (*Id.* ¶ 11 (citing Ex. C to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 5, 2022), Doc. No. 26-3).)

[23] (*Id.* ¶ 12 (citing Ex. C to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 5, 2022), Doc. No. 26-3).)

[24] (*Id.* ¶ 13 (citing Ex. C to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 5, 2022), Doc. No. 26-3).)

[25] (*Id.* ¶ 14 (citing Ex. D to Stipulated Facts, Email from Josh Chambers to Heather White (Oct. 5, 2022), Doc. No. 26-4).)

The next day, Defendants' counsel circulated a revised release, which did not include a confidentiality provision and indicated "I will see if I can get [my client] to agree.  If not, I think we may be at an impasse."[26]  Mr. Echevarria's counsel confirmed the next day that Mr. Echevarria was not willing to sign the revised release, stating, "I don't believe the parties will be able to reach agreement at this time."[27]

Defendants' counsel informed Mr. Echevarria's counsel they were considering moving to enforce the settlement agreement because Mr. Echevarria's offer (which Defendants accepted) was not conditioned on a confidentiality agreement.  Defendants' counsel explained, "[i]f the City moves to enforce the settlement, it would be without a confidentiality provision, because that is what was agreed to" at the September 30 mediation.[28]  Mr. Echevarria's counsel responded that he believed no agreement was reached in mediation because "there wasn't an actual meeting of the minds on the confidentiality provision."[29]

Defendants filed their motion to enforce the settlement agreement on November 18, 2022.[30]

---

[26] (*Id.* ¶ 15 (alternation in original) (citing Ex. E to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 6, 2022), Doc. No. 26-5).)

[27] (*Id.* ¶ 16 (citing Ex. F to Stipulated Facts, Email from Josh Chambers to Heather White (Oct. 7, 2022), Doc. No. 26-6).)

[28] (*Id.* ¶ 17 (citing Ex. G to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 7, 2022), Doc. No. 26-7).)

[29] (*Id.* ¶ 18 (citing Ex. H to Stipulated Facts, Email from Josh Chambers to Heather White (Oct. 7, 2022), Doc. No. 26-8).)

[30] (*See* Mot., Doc. No. 25.)

LEGAL STANDARDS

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while litigation is pending before it."[31]  "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law."[32] There is no dispute that Utah contract law applies here.[33]  Under Utah law, "courts will enforce settlement agreements 'if the record establishes a binding agreement and the excuse for nonperformance is comparatively unsubstantial.'"[34]  An agreement is binding "where it can be shown that the parties had a meeting of the minds as to the integral features of [the] agreement and that the terms are sufficiently definite as to be capable of being enforced."[35]  "Whether there is a meeting of the minds depends on whether the parties actually intended to contract" and is generally a question "to be determined by the trier of fact."[36]  However, "a contract may be enforced even though some contract terms may be missing or left open to be agreed upon" so

---

[31] *Farmer v. Banco Popular of N. Am.*, 557 F. App'x 762, 767 (10th Cir. 2014) (unpublished) (quoting *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004)).

[32] *Shoels*, 375 F.3d at 1060 (citing *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)).

[33] (*See* Mot. 3, Doc. No. 25 (citing Utah law); Opp'n 5, Doc. No. 30 (same)); *see also Patterson v. Knight*, 2017 UT App 22, ¶ 6, 391 P.3d 1075, 1077 ("Settlement agreements are governed by the rules applied to general contract actions." (quoting *Sackler v. Savin*, 897 P.2d 1217, 1220 (Utah 1995))).

[34] *Miller v. Basic Research, LLC*, No. 2:07-cv-871, 2013 U.S. Dist. LEXIS 40553, at *16 (D. Utah Mar. 22, 2013) (unpublished) (quoting *Nature's Sunshine Prods. v. Sunrider Corp.*, 511 F. App'x 710, 714 (10th Cir. 2013) (unpublished)).

[35] *Patterson*, 2017 UT App 22, ¶ 6 (alteration in original) (internal quotation marks omitted); *see also Terry v. Bacon*, 2011 UT App 432, ¶ 21, 269 P.3 188, 195 ("Under general contract law, it is fundamental that there be a meeting of the minds as to all essential features of a contract.").

[36] *Terry*, 2011 UT App 432, ¶ 21 (quoting *O'Hara v. Hall*, 628 P.2d 1289, 1291 (Utah 1981)).

long as "the essential terms are [not] so uncertain that there is no basis for deciding whether the agreement has been kept or broken."[37]

ANALYSIS

**A.      The Agreement Reached at the September 30, 2022, Mediation Need Not Be in Writing to Be Enforceable.**

In *Reese v. Tingey Construction*,[38] the Utah Supreme Court held agreements reached in mediation must be in writing to be enforceable by a court.[39]  Because Defendants seek to enforce an oral agreement reached during mediation, the court ordered the parties to submit supplemental briefing regarding the applicability of *Reese*.[40]  However, *Reese* is inapplicable here because the parties and mediator waived confidentiality with regard to specific facts, and these facts are sufficient for the court to make a determination as to formation.

In *Reese*, the Utah Supreme Court concluded that while courts can sometimes enforce oral agreements under contract law, this is not "an appropriate role for courts when the putative agreement was reached within the context of a mediation."[41]  Specifically, the *Reese* court found that for mediation agreements to be enforceable by a court, they must "be reduced to a writing and signed by all the parties to the agreement."[42]  In reaching this decision, the *Reese* court focused on important public policy interests served by ensuring mediation negotiations remain

---

[37] *Patterson*, 2017 UT App 22, ¶ 6; *see also Park Prop. Mgmt. LLC v. G6 Hospitality Franchising LLC*, 2022 UT App 75, ¶ 21, 514 P.3d 148, 153.

[38] 2008 UT 7, 177 P.3d 605.

[39] *Id.* ¶ 15.

[40] (*See* Doc. No. 32.)

[41] *Reese*, 2008 UT 7, ¶ 14.

[42] *Id.* ¶ 15.

7

confidential.[43]  But the court also recognized this confidentiality may be waived for various reasons, including by agreement between the parties.[44]  Finding it could not "enforce the terms of an oral agreement reached in mediation without requiring parties to disclose" confidential settlement negotiations, the *Reese* court was "not prepared to invade the confidentiality protections afforded parties to mediation," "[a]bsent the existence of an exception."[45]

In his supplemental brief, Mr. Echevarria confirms confidentiality was waived with respect to the stipulated facts submitted by the parties.[46]  Although he notes there is no written agreement memorializing the September 30 mediation, Mr. Echevarria does not argue *Reese*'s "written agreement" requirement applies to this case.[47]  Instead, Mr. Echevarria acknowledges the parties' stipulated facts create an exception to full mediation confidentiality.[48]  However, he argues the stipulated facts were "narrowly tailored . . . to avoid waiving broader privileges of mediation confidentiality,"[49] making the relevant inquiry whether "there is enough information [for the court] to determine whether a non-disclosure provision was or was not material to the

---

[43] *See id.* ¶ 8.

[44] *See id.* ¶ 9 ("For example, all parties to a mediation, including the mediator, can agree to disclose information, such as memoranda, notes, records, or work product, that is obtained during the mediation."); *see also* Utah Code. Ann. § 78B-10-105 (providing a privilege can be waived "if it is expressly waived by all parties to the mediation, and: (a) in the case of the privilege of a mediator, it is expressly waived by the mediator; and (b) in the case of the privilege of a nonparty participant, it is expressly waived by the nonparty participant").

[45] *Reese*, 2008 UT 7, ¶ 12.

[46] (Pl.'s Suppl. Br. 3, Doc. No. 33.)

[47] (*See id.* at 2.)

[48] (*See id.* at 3.)

[49] (*Id.*)

alleged settlement agreement . . . without delving into confidential settlement and mediation communications beyond the [s]tipulated [f]acts."[50]  Mr. Echevarria contends there is not.[51]

On the other hand, Defendants argue *Reese* is wholly inapplicable because (1) the *Reese* court expressly stated the opinion did not apply to the Utah Uniform Mediation Act,[52] which applies in this case,[53] and (2) *Reese*'s holding was "premised on confidentiality issues which do not exist in this case, given that the parties jointly and expressly waived confidentiality as to the facts relevant [to] determining whether a settlement was reached at the mediation."[54]

Defendants' argument as to the parties' confidentiality waiver is persuasive.[55]  The *Reese* court expressly noted confidentiality may be waived by agreement.[56]  And the *Reese* court's decision was premised in part on the absence of "the existence of an exception" to the parties' confidentiality protections in that case.[57]  As Defendants correctly point out, "[h]ere, the parties jointly waived the confidentiality privilege and agreed to disclose the facts on which the motion to enforce the settlement is based, invoking the very exception the *Reese* court recognized was

---

[50] (*Id.* at 4.)

[51] (*See id.*)

[52] Utah Code Ann. §§ 78B-10-101–78B-10-114.

[53] (*See* Defs.' Suppl. Br. 3, Doc. No. 34); *see also Reese*, 2008 UT 7, ¶ 12 n.2 (noting the court would not apply the Utah Uniform Mediation Act where the act went into effect after the mediation at issue).

[54] (*See* Defs.' Suppl. Br. 2, Doc. No. 34.)

[55] Defendants' first argument is less persuasive where the *Reese* court acknowledged the policy considerations underlying the Utah Alternative Dispute Resolution Act are the same as those underlying the Utah Uniform Mediation Act.  *See Reese*, 2008 UT 7, ¶ 12.

[56] *See id.* ¶ 9.

[57] *Id.*

the basis for its opinion."[58]  Where confidentiality was waived by Mr. Echevarria, Defendants,

and the mediator, the policy considerations driving the *Reese* decision are significantly

undermined, if not irrelevant.  And where the extent of the waiver is sufficient to permit a

decision as to the parties' agreement (as detailed below), the parties' mediation agreement need

not be in writing to be enforceable.

### B.    The Parties Agreed on the Essential, Material Terms at the Mediation.

Defendants only seek to enforce the agreement reached during mediation: payment of

$33,333.00 in exchange for dismissal of claims, without a confidentiality provision.[59]  Even

absent a confidentiality provision, Mr. Echevarria contends no binding agreement was reached at

the mediation because "[t]here was no meeting of the minds with respect to confidentiality,

which was a material term of any settlement."[60]

In support of his position, Mr. Echevarria relies on *Jones v. Mackey Price Thompson &*

*Ostler*[61] for the proposition that, "[s]o long as there is any uncertainty or indefiniteness, or future

negotiations or considerations to be had between the parties, there is not a . . . contract."[62]  But

the *Jones* court found only that uncertainty, indefiniteness, or future negotiations in relation to

"integral features" or "essential terms" preclude formation of a contract.[63]  Under Utah law, "a

---

[58] (Defs.' Suppl. Br. 5, Doc. No. 34.)

[59] (Stipulated Facts ¶ 17, Doc. No. 26 (citing Ex. G to Stipulated Facts, Email from Heather White to Josh Chambers (Oct. 7, 2022), Doc. No. 26-7).)

[60] (Opp'n 1–2, Doc. No. 30.)

[61] 2015 UT 60, 355 P.3d 1000.

[62] *Id.* ¶ 31 (second alteration in original) (quoting *Prince, Yeates, & Geldzahler v. Young*, 2004 UT 26, ¶ 17, 94 P.3d 179, 184).

[63] *See id.*

contract may be enforced even though some contract terms may be missing or left open to be agreed upon" so long as "the *essential terms* are [not] so uncertain that there [would be] no basis for deciding whether the agreement has been kept or broken."[64]

This narrows the question to whether confidentiality was an essential term of the parties' mediation agreement on September 30. The "majority of courts to decide the issue have held that confidentiality is not a material term of a settlement agreement."[65]  For instance, in *On the Planet v. Intelliquis International, Inc.*,[66] the District of Utah relied on cases applying Utah law to enforce a settlement agreement—even after the parties were unable to agree on a confidentiality provision, post-negotiation.[67]  Concluding the confidentiality provision was a "collateral matter," the court found the original settlement agreement contained all the "essential terms and that those terms [were] sufficiently definite" to create an enforceable contract, even without a confidentiality provision.[68]

---

[64] *Patterson*, 2017 UT App 22, ¶ 6 (emphasis added); *see also On the Planet v. Intelliquis Int'l, Inc.*, No. 2:99-cv-324, 2000 U.S. Dist. LEXIS 22165, at *13 (D. Utah May 23, 2000) (unpublished) (citing cases applying Utah law) ("It is not necessary that the contract provide for every collateral matter or possible contingency.  Rather, the requirement is that the parties themselves must have set forth with sufficient definiteness at least the essential terms of the contract." (citation and internal quotation marks omitted)).

[65] *Meek & Assocs., Inc. v. First Union Ins. Group*, No. 99-2519-CM, 2002 U.S. Dist. LEXIS 16452, at *9 (D. Kan. Aug. 6, 2002) (unpublished) (compiling cases); *see also Precision Concrete Cutting, Inc. v. Concrete Sidewalk Sols., Inc.*, No. 11-cv-01123-MEH, 2012 U.S. Dist. LEXIS 25838, at *9 (D. Colo. Feb. 28, 2012) (unpublished) (finding the parties reached an enforceable agreement during a settlement conference, despite their post-settlement disagreement as to whether to include a confidentiality clause).

[66] 2000 U.S. Dist. LEXIS 22165.

[67] *See id.* at *10, 13–14.

[68] *Id.* at *14.

11

Surely, for some parties, confidentiality is material to a settlement agreement.[69]  But confidentiality provisions are not material as a matter of law; whether they are material depends on the parties' conduct, especially during negotiations.[70]  Confidentiality will not be considered a material term where the parties fail to include it in the negotiations and agreement.[71]

The stipulated facts establish the following occurred at the September 30 mediation: (1) Mr. Echevarria made an offer to the mediator to settle in the amount of $33,333.00;[72] (2) Defendants accepted that offer;[73] (3) no other conditions or terms of settlement were conveyed by the mediator or between the parties;[74] and (4) the parties did not discuss additional, specific terms at the mediation.[75]  After these events, the mediation concluded.

---

[69] *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 509 (7th Cir. 2007).

[70] *See id.* at 508–09 (clarifying that *Higbee v. Sentry Insurance Co.*, 253 F.3d 994 (7th Cir. 2001), does not stand for the proposition that these provisions are material as a matter of law; instead, in *Higbee*, the plaintiff "made clear during negotiations that she would not settle until the parties hammered out confidentiality and nondisparagement clauses").

[71] *See Blackstone v. Brink*, 63 F. Supp. 3d 68, 77 (D.D.C. 2014) (articulating the finding of *Dyer v. Bilaal*, 983 A.2d 349, 358 (D.D.C. 2009), "that a confidentiality clause was not a material term in part because neither party mentioned confidentiality while negotiating or accepting the settlement"); *Meek*, 2002 U.S. Dist. LEXIS 16452, at *9 ("[N]either the law nor common practice support a finding that confidentiality is understood by the parties to be included in an agreement if the parties have not discussed the issue.").

[72] (Stipulated Facts ¶ 5, Doc. No. 26.)  An offer to "settle" is an offer to accept money in exchange for the dismissal of claims.  *See Thurston v. Block United LLC*, 2021 UT App 80, ¶ 5, 496 P.3d 268, 270 ("[L]ike any other garden-variety settlement agreement, the crux of the agreement was that [defendant] would pay [plaintiff] specified sums of money and other assets in exchange for [plaintiff] agreeing to sign and file dismissal papers and to release [defendant] from liability.").

[73] (Stipulated Facts ¶ 6, Doc. No. 26.)

[74] (*Id.*)

[75] (*Id.* ¶ 8.)

Similar to the *On the Planet* case, any discussion regarding confidentiality between Mr. Echevarria and Defendants occurred post-mediation.  The stipulated facts indicate no terms of settlement other than the exchange of money were discussed or conveyed during the mediation.  Only afterward did confidentiality become an issue.  It was in post-mediation discussions, after the parties had agreed to settle for $33,333.00, that Mr. Echevarria indicated a confidentiality clause would be a "deal breaker."[76]  Likewise, only after the mediation did Defendants insist on a confidentiality clause.[77]  The sole term discussed at the mediation was the amount of money to be paid to Mr. Echevarria in exchange for dismissal of his claims.  This demonstrates the amount to be paid was the heart of the matter; it was what the parties considered material.  The fact that once Mr. Echevarria made a settlement offer and Defendants accepted it, the parties ended the mediation without discussing other terms,[78] shows all other matters were collateral.

Just as in *On the Planet*, the parties agreed on the essential terms and those terms were sufficiently definite ($33,333.00 to be paid by Defendants in exchange for the dismissal of Mr. Echevarria's claims) to create an enforceable oral contract.  Any post-mediation communications between counsel simply served as an attempt to address collateral matters left open by the parties.[79]

---

[76] (*See id.* ¶¶ 10, 14.)

[77] (*See id* ¶ 13.)

[78] *Cf. Patterson*, 2017 UT App 22, ¶ 12 ("It is common for parties to later memorialize in a more formal document agreements created in mediation.  This arrangement does not preclude the enforcement or finality of the agreement created in mediation so long as the terms are sufficiently definite as to be capable of being enforced." (internal quotation marks omitted)).

[79] *See id.* ¶ 6.

CONCLUSION

The parties waived confidentiality in mediation as to the stipulated facts, neither party established a confidentiality provision was a material term during the mediation, and the parties agreed on the essential settlement terms ($33,333.00 for dismissal of claims).  Accordingly, the parties entered into a binding oral agreement without a confidentiality provision at the mediation on September 30, 2022, and Defendants' motion to enforce the settlement[80] is GRANTED.  The court ORDERS Defendants to pay Mr. Echevarria $33,333.00 and Mr. Echevarria to file a notice of dismissal or a motion to dismiss.

DATED this 8th day of February, 2023.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

---

[80] (Doc. No. 25.)